### J. P. ANDERSON v. THE STATE.

*No. 3844.   Decided March 23.*

**False Packing of Cotton.**—In order to sustain a conviction for false packing of cotton, with intent to defraud, it must appear that defendant knew that the cotton was false-packed, or was in possession of such facts as were sufficient to put him upon notice or inquiry as to that fact, and that he sold the cotton with the intent to defraud. And where the evidence fails to establish these facts, a judgment of conviction will be reversed.

APPEAL from the County Court of Navarro. Tried below before Hon. John H. Rice, County Judge.

Appellant was prosecuted in the court below by indictment brought under provisions of article 470 of the Penal Code, for selling 100 bales

of falsely packed cotton, in which there had been placed and was concealed a large quantity of dirt, etc., and which sale so made by him was with intent to defraud. At his trial he was found guilty, and the punishment assessed at a fine of $110.34.

J. P. Anderson was a public ginner at Winkler, a country town in Navarro County. There were four public gins at the place. Anderson owned farms and had many renters, black and white. He sold not only his own cotton but cotton of other parties, and settled by the yard weights at Corsicana. He had carried on the business for years, and established a high reputation for honesty and fair dealing among his neighbors and the merchants at Corsicana, and never had any trouble about his cotton before. In the cotton season of 1890, in October, 165 bales of cotton were sent to Douglass' cotton yard in Corsicana, from Winkler, but not sold owing to the low price of cotton. Thirty bales of this cotton belonged to Grayson, a merchant at Winkler, from two to four bales out of the lot being ginned at Anderson's gin. About forty-two bales belonged to various parties, and the balance belonged to Anderson, being raised by him and tolled from ginning and bought from tenants to whom he had advanced. There was no means provided for protecting the cotton from the weather in the Douglass cotton yard, and the cotton was placed on the bare ground and exposed to a wet winter until February, when it was sold. The Douglass yard is a low place, and the cotton was often lying in mud and water. Defendant was sent for because the cotton was rotting. The cotton was well packed, and there was no way to tell its condition from outside appearance of the bales. When the lot was sold and was being sampled, they discovered the dirt in some of the bales. The whole 165 bales were opened and examined. In most of the bales were rotten cotton and motes; in some sand, and in some dirt; but no marks or descriptions of a single bale was kept, nor were the bales out of which the sand was taken identified, but on the contrary, when the defendant went to examine them they were badly slashed and mixed up. Thirty bales of this cotton was Grayson's, who paid a rebate, and no witness knew how many bales had sand and how many had not. Shwarts, who was not present except occasionally, said not less than 100 bales, but neither of the examiners would commit themselves to any number nor to any marks. The only fact upon which the State sought to fix guilty knowledge was defendant's statement to Douglass, that he was afraid some of the bales might be sand-packed; but the witness could not state when this statement was made—before the sale or while the dirt was being taken out. Another witness, Duncan, testified, that defendant was very much mortified at the condition of the cotton, and said he "could hardly look a man in the face; that he told the boys to scrape up about the gin but not to put the stuff in it."

It was proved beyond question that the condenser on the gin was old and broken; that it required constant fixing; that the cotton would be thrown out of the holes under the condenser where the dust fell; that as each bale was ginned the packers would gather the scraps of cotton and shake the dust as far as possible and throw it on top of the bale, in one corner, before packing; that this cotton was filled with dust and often motes, and would rot when exposed to water for a long time; that the scraps thrown from the broken condenser were naturally large; that the cotton, owing to the rainy winter, was unusually dirty; that defendant employed four negroes to pack; that there was always a crowd at the gin, and he ginned and packed only in the day-time.

*Simkins & Neblett,* for appellant.

*R. H. Harrison,* Assistant Attorney-General, for the State.

HURT, JUDGE.—The appellant was convicted of knowingly selling 100 bales of dirt-packed cotton with intent to defraud. The only question in the case necessary to be considered is as to the sufficiency of the evidence to support the conviction. The gist of the offense is the intent to defraud, and in order to sustain the conviction it must appear that the defendant sold the cotton with such intent. Can there be such intent to defraud unless the defendant knew that the cotton was falsely packed, or was in possession of such facts as visited upon him the duty of making inquiry or examination as to the condition of the cotton, and he failed to make such examination or inquiry? We think not. If the defendant, not knowing that the cotton was falsely packed, sold the same in good faith, believing it to be properly packed, it can not be said that the sale was made to defraud. The burden was upon the State to show the fraudulent intent. Without reciting the evidence, we are of opinion that it was not shown at the time of the sale that defendant had knowledge that the cotton was falsely packed, or that the circumstances were such as charged him with notice of its conditions, and made his failure to examine into it or disclose his information proof of his intent to defraud.

*Reversed and remanded.*

Davidson, J., absent.